E

X

H

I

B

I

T

A

**EXHIBIT A**

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

DAVID S. FRANKEL
PARTNER
PHONE 212-715-9221
FAX 212-715-9236
DFRANKEL@KRAMERLEVIN.COM

February 23, 2012



<u>Via Facsimile</u>

The Honorable Jed S. Rakoff
U.S. District Judge, Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *SEC v. Gupta*, 11 Civ. 7566 (JSR)

Dear Judge Rakoff:

I am writing on behalf of Mr. Gupta to address the issues identified by the Court during the February 16, 2012 hearing: whether, because of the pendency of the parallel criminal case, the defense is entitled to *Brady* material contained in the SEC interview notes, "and whether that overcomes the work product doctrine that might otherwise apply." (*See* Feb. 16, 2012 Tr. 50-51).

The Supreme Court has made clear – in a case presenting a more compelling interest in confidentiality than any such interest associated with fact work product – that the answer to both questions is yes.

In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the defendant was charged in a state court criminal case with rape and a number of related offenses. The alleged victim was his 13 year old daughter, who said she had been repeatedly assaulted by Ritchie over the preceding four years. She had reported these incidents to the police, who in turn referred the matter to Children and Youth Services ("CYS"), a Pennsylvania state agency responsible for investigating mistreatment and neglect cases.

Ritchie subpoenaed CYS for its file relating to the events that were the subject of the charges in his criminal case and for records of a separate CYS investigation into allegations by an unidentified source that Ritchie's children were being abused. CYS refused to produce the documents, citing a Pennsylvania statute applicable to the agency and requiring that reports of alleged child abuse be kept confidential, subject only to certain exceptions. One of the exceptions was for court ordered disclosure. Ritchie argued to the trial court in his criminal case "that he was entitled to the information because the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Id.* at 44. The trial court denied the motion. Ritchie appealed and ultimately won in the Pennsylvania Supreme Court, which

1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036-2714   PHONE 212.715.9100   FAX 212.715.8000
990 MARSH ROAD   MENLO PARK CA 94025-1949   PHONE 650.752.1700   FAX 650.752.1800
47 AVENUE HOCHE   75008 PARIS FRANCE   PHONE 033-(1) 44 09 46 00   FAX 033-(1) 44 09 46 01
WWW.KRAMERLEVIN.COM

KL3 2805594.1

Case 2:14-cv-06979-DDP-JC   Document 214-1   Filed 05/14/20   Page 3 of 29   Page ID
#:3456
02-23-12   11:35am   From-...   ...   T-...   P003

Case 1:11-cv-07566-JSR   Document 40   Filed 02/27/12   Page 2 of 4

## KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Jed S. Rakoff
February 23, 2012
Page 2

held that the failure to permit Ritchie's lawyer to review the CYS file violated both the
Confrontation Clause and the Compulsory Process Clause of the U.S. Constitution.

The U.S. Supreme Court rejected the state court's federal Confrontation Clause analysis,
and reserved for another day the Compulsory Process Clause question, both in an opinion joined
by four justices. Justice Powell, writing for a majority, then concluded that Ritchie's claims
were "more properly . . . considered by reference to due process," *i.e.*, under *Brady v. Maryland*.
*Id.* at 57. The question was whether, in light of the state statute making the contents of the CYS
file privileged, "[r]equiring disclosure . . . would override the Commonwealth's compelling
interest in confidentiality on the mere speculation that the file 'might' have been useful to the
defense." *Id.* The Court concluded it would not, noting that although "the public interest in
protecting this type of sensitive information is strong," the statute itself contained exceptions,
including when CYS was directed to disclose its records by court order. *Id.* Given that the
Pennsylvania legislature contemplated at least some use of CYS files in judicial proceedings, and
given the importance of Ritchie's due process rights under *Brady*, the Court found "no reason to
believe that relevant information would not be disclosed when a court of competent jurisdiction
determines that the information is 'material' to the defense of the accused." *Id.* at 58.

In other words, even a compelling state interest in protecting the privacy of abused or
neglected children, by making presumptively confidential the reports and other work product of
the investigative agency, must yield to a criminal defendant's due process rights under *Brady*.
Surely this justification for nondisclosure at issue in *Pennsylvania v. Ritchie* is more powerful
than a claim of fact work product with respect to notes of joint witness interviews in a financial
fraud case, where related (but potentially different or only partially overlapping) *Brady* material
may reside.

Indeed, the Supreme Court refused to endorse wholesale disclosure to a criminal defendant
of the CYS files because to do so

> would sacrifice unnecessarily the Commonwealth's compelling
> interest in protecting its child abuse information. . . . [I]t could
> have a seriously adverse effect on Pennsylvania's efforts to
> uncover and treat abuse. . . . It . . . is essential that the child have a
> state-designated person to whom he may turn, and to do so with
> the assurance of confidentiality. Relatives and neighbors who
> suspect abuse also will be more willing to come forward if they
> know their identities will be protected.

480 U.S. at 60. Accordingly, only *Brady* information contained within the CYS files was
required to be produced. In sharp contrast, a well taken assertion of "otherwise discoverable"

1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036-2714   PHONE 212.715.9100   FAX 212.715.8000
990 MARSH ROAD   MENLO PARK CA 94025-1949   PHONE 650.752.1700   FAX 650.752.1800
47 AVENUE HOCHE   75008 PARIS FRANCE   PHONE (33-1) 44 09 46 00   FAX (33-1) 44 09 46 01

WWW.KRAMERLEVIN.COM

KL3 2855104.1

Case 2:14-cv-06979-DDP-JC   Document 214-1   Filed 05/14/20   Page 4 of 29   Page ID
#:3457
02/23/12   17:5   Case 1:11-cv-07566-JSR   Document 40   Filed 02/27/12   Page 3 of 4   @004

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

The Honorable Jed S. Rakoff
February 23, 2012
Page 3

fact work product will be defeated by a showing of substantial evidentiary need, even in the absence of any *Brady* (or other constitutional) imperative. Fed. R. Civ. P. 26(b)(3)(A)(i) and (ii); *see In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982) (interview notes in "paraphrased, abbreviated form" required to be disclosed; "[t]o the extent the statements imply the attorney's questions from which inferences might be drawn as to his thinking, those inferences merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description 'legal theory'"). In sum, as this Court has suggested might be the case, Mr. Gupta's due process right under *Brady* amounts to "a particularized need" sufficient to overcome a claim of fact work product. (*See* Feb. 16, 2012 Tr. 40-41).[1]

We have found only a small number of lower court cases addressing the interplay between *Brady* and work product. They all conclude (or assume) that *Brady* trumps work product. *See, e.g., Dickson v. Quarterman*, 462 F.3d 470, 479-80 (5th Cir. 2006) (recorded pretrial interview statements containing no protected attorney opinion subject to *Brady*); *Mincey v. Head*, 206 F.3d 1106, 1132-41 & n.63 (11th Cir. 2000) (agreeing, in federal habeas proceeding, that *Brady* required production of notes of prosecutor's interview of the psychologist and nurse who examined defendant to determine his competency to stand trial and his sanity, even though the notes "probably constituted work product," but finding procedural default and harmless error); *United States v. Gutierrez*, No. SA-05-CR-639-XR, 2007 U.S. Dist. LEXIS 76780, at *11 (W.D. Tex. Oct. 16, 2007) (requiring disclosure of favorable evidence in interview notes even though the notes "involve some level of attorney discretion or interpretation," and commenting that "[i]t does not make sense to provide a prosecutor with an escape from his constitutional duties merely because he chose to record what was said through note-taking rather than an audio tape"); *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) (materials which would otherwise be exempt from disclosure to the defense as government work product under Fed. R. Civ. P. 16(a)(2) must be produced if *Brady*); *Castleberry v. Crisp*, 414 F. Supp. 945, 953 (N.D. Okla. 1976) ("'work product' discovery rule cannot, of course, be applied in a manner which derogates a defendant's constitutional rights as propounded in *Brady*"); *see also* Advisory Committee Note to 1974 Amendment to Fed. R. Crim. P. 16(a)(2) (notwithstanding that Rule 16 does not authorize discovery of government work product, *Brady* "requires the disclosure of evidence favorable to the defendant [and t]his is, of course, not changed by this rule").[2]

---

[1]  The prosecutor in Ritchie's case had not been given access to the CYS file, nor was he aware of its contents, but this fact played no role in the Supreme Court's decision. 480 U.S. at 44 n.4.

[2]  The same conclusion also flows from the "joint investigation" cases we previously cited. Those cases are about getting, among other things, witness statements from other government agencies – witness statements akin to FBI 302's. Yet no one contends that either the 302's, or the agency's witness notes to the extent they contain *Brady* material, are work product.

1177 AVENUE OF THE AMERICAS  NEW YORK NY 10036-2714  PHONE 212.715.9100  FAX 212.715.8000

990 Marsh Road  Menlo Park CA 94025-1949  Phone 650.752.1700  Fax 650.752.1800

47 AVENUE HOCHE  75008 PARIS FRANCE  PHONE (33-1) 44 09 46 00  FAX (33-1) 44 09 46 01

WWW.KRAMERLEVIN.COM

KL3 2865504.1

Case 2:14-cv-06979-DDP-JC   Document 214-1   Filed 05/14/20   Page 5 of 29   Page ID
#:3458
02/23/12   17:5 Case 1:11-cv-07566-JSR   Document 40   Filed 02/27/12   Page 4 of 4   @005

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Jed S. Rakoff
February 23, 2012
Page 4


    For the reasons stated, we respectfully submit that any *Brady* material contained within the SEC's interview notes or memos should be produced to the defense.


                 Respectfully submitted,

                 David S. Frankel

cc:   Samidh Guha, Esq. (via e-mail)
      Kevin P. McGrath, Esq. (via e-mail)
      Valerie A. Szczepanik, Esq. (via e-mail)

1177 AVENUE OF THE AMERICAS · NEW YORK NY 10036-2714 · PHONE 212.715.9100 · FAX 212.715.8000

990 MARSH ROAD · MENLO PARK CA 94025-1949 · PHONE 650.752.1700 · FAX 650.752.1800

47 AVENUE HOCHE · 75008 PARIS FRANCE · PHONE (33-1) 44 09 46 00 · FAX (33-1) 44 09 46 01

WWW.KRAMERLEVIN.COM

KL3 2865504 1

E

X

H

I

B

I

T

B

**EXHIBIT B**

E

X

H

I

B

I

T

C

**EXHIBIT C**

E

X

H

I

B

I

T

D

**EXHIBIT D**

**BANK OF AMERICA** 

LONDON BERRY
BRET M BERRY

**Date**
February 18, 2020

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## LONDON BERRY, BRET M BERRY:

# Your PERSONAL CHECKING/SAVINGS account ending in ▇▇▇ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper

Exhibit D, p. 18


**BANK OF AMERICA**

**Date**
February 18, 2020

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

SASHA BERRY
BRET M BERRY

█████████████

## SASHA BERRY, BRET M BERRY:

### Your PERSONAL CHECKING/SAVINGS account ending in ████ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding. If you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper



**Date**
February 18, 2020

BERRY LAND MANAGEMENT LLC

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## BERRY LAND MANAGEMENT LLC:

## Your BUSINESS CHECKING/SAVINGS account ending in ▮▮▮ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper



**BANK OF AMERICA**

**Date**
February 18, 2020

BERRY MEDICAL ENTERPRISES, INC.

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## BERRY MEDICAL ENTERPRISES, INC.:

## Your BUSINESS CHECKING/SAVINGS account ending in ▇▇▇ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper

00-61-07008  05-2019

Exhibit D, p. 21


**BANK OF AMERICA**

**Date**
February 18, 2020

GULF SHORE RENTAL PROPERTY LLC

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## GULF SHORE RENTAL PROPERTY LLC:

### Your BUSINESS CHECKING/SAVINGS account ending in ████ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

00-61-0700B 05-2019

♻ Recycled Paper

Exhibit D, p. 22


**BANK OF AMERICA**

**Date**
February 18, 2020

ARCTURUS INDUSTRIES LLC

**Account Information**
bankofamerica.com

**Note** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## ARCTURUS INDUSTRIES LLC:

Your BUSINESS CHECKING/SAVINGS account ending in ▇▇▇ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.



Date

February 18, 2020

Account Information

bankofamerica.com

SOREN BERRY
BRET M BERRY

▮▮▮▮▮▮▮▮▮▮

Note: If you have other accounts
with us, you may receive a separate
notice from us about those
accounts.

## SOREN BERRY, BRET M BERRY:

## Your PERSONAL CHECKING/SAVINGS account ending in ▮▮▮ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

® Recycled Paper

00-61-0700B  05-2019

Exhibit D, p. 24



**BANK OF AMERICA**

**Date**
February 18, 2020

JACOBI BERRY
BRET M BERRY

█████████████

**Account information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

## JACOBI BERRY, BRET M BERRY:

Your PERSONAL CHECKING/SAVINGS account ending in ████ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper



**BANK OF AMERICA**

BRET M BERRY

**Date**
February 18, 2020

**Account Information**
bankofamerica.com

**Note:** If you have other accounts with us, you may receive a separate notice from us about those accounts.

**BRET M BERRY:**

## Your PERSONAL CHECKING/SAVINGS account ending in ███ will be restricted from use in 21 days, and permanently closed 30 days from the date of this notice.

After a careful review of your banking relationship, we've made the decision to close your account above. As a reminder, your Deposit Account Agreement, which you received when you opened your account, allows either you or us to close your account at any time. This decision is final and won't be reconsidered. We're notifying you in advance to give you the opportunity to make banking arrangements at another financial institution.

### What you need to do

- **Stop writing checks immediately** – It's important you know that any checks presented for payment once the account is restricted, which is 21 days from the date of this notice, will be returned unpaid.
- **Deposit funds to prevent an overdraft** – If your account is overdrawn or becomes overdrawn, a deposit of cash must be made to bring the account to a zero balance. If the account remains in a negative balance, we may report the account to the following reporting agencies: ChexSystems, Inc., Early Warning Services, LLC, or both. This may affect your ability to open an account at another financial institution for up to seven years.
- **Cancel any ongoing payments** – Contact any third parties sending electronic or Automated Clearing House (ACH) transactions to make other payment arrangements or cancel these transactions. In addition, cancel any automatic payments you have made using online banking. This will help you avoid fees or items being returned unpaid.
- **Update your payment method on any Bank of America accounts** – If your line of credit, mortgage or Home Equity Line of Credit payment is being paid automatically from this account please make other payment arrangements. You can mail a check to us at the address listed on your account statement or set up automatic payments through another financial institution.

### What you need to know

- Your debit card will be permanently deactivated 21 days from the date of this notice when the account is restricted.
- If you are enrolled in any of the following services: Quickbooks®, Account Management, Remote Deposit Online, Direct Payment or Express Invoicing®, your enrollment will be canceled on the day your account is closed. We will not cancel your enrollment in payroll services by Intuit®, but you must contact Intuit prior to account closure to provide Intuit with a new account source of payroll funding, if you use your Bank of America account to process your payroll or for the billing of payroll fees.

♻ Recycled Paper

00-61-07008  05-2019

Exhibit D, p. 26



**BANK OF AMERICA**

www.bankofamerica.com

LL 0222     684 000     04864 #801 SP 0.419
BRET BERRY

⁣⁣|ₗₗₗₗₗₗ|ₗₗ|ₗₗₗₗₗₗ||ₗₗₗₗ|ₗ||ₗₗₗₗ|ₗ|ₗₗₗₗ|ₗₗₗₗₗₗ|ₗ|ₗₗₗₗ|

February 19, 2020

Credit card ending: ▮▮▮▮

Bret Berry:

This letter is to advise you that your above referenced account has been closed because your risk profile no longer aligns with the bank's risk tolerance.

**What you need to know**
- According to your account Agreement, either you or we can close the account at any time.
- Pending transactions may be cancelled and future transactions will be declined.
- If you've established Overdraft Protection with this account, it will be discontinued.
- If there are reward points associated with this account, they will be forfeited.

**What you need to do**
- Pay any balance that may be outstanding. If there's a balance on the account, you're still obligated, under the terms of your account Agreement, to pay any balances that may be outstanding. You may either pay it in full immediately, or continue to make at least minimum monthly payments until the balances are paid in full.
- To avoid confusion, destroy any cards and convenience checks that are associated with this account relationship.
- Notify any companies that may post recurring charges to this account, such as internet access and subscriptions, that this account is closed.

FR2 ACPT 1-1 US-EN                    01 of 02

 **REGIONS**



February 21, 2020



0000375 01 MB  0.436 001
CHARLESNAKE  LLC

**Notice of Hold for Reasonable Cause regarding your Regions deposit account ending with** ███

We are delaying the availability of funds that were deposited to the above-referenced account as part of the following transaction.  If you previously received a notice of hold for this deposit, please disregard and reference this more recent hold notice.

| Deposit Date | Item Amount | Funds Available On |
|---|---|---|
| 02/20/2020 | $  2,500.00 | 02/29/2020 |

The availability of these funds is being delayed because of the following:
- We have confidential information that indicates that the check may not be paid.

If you did not receive this notice at the time you made the deposit and the check you deposited is eventually paid, we will refund to you any fees for overdrafts or returned checks that result solely from the additional delay that we are placing on these funds.  You may obtain a refund of such fees at any Regions Bank branch office.

If you have any questions about this notice, please visit your Regions branch or call us at 1-800-REGIONS (734-4667). Thank you for your prompt attention to this important matter.

Regions Check & Deposit Fraud Monitoring Department

DFDHL 082019

Exhibit D, p. 28

 **REGIONS**

February 21, 2020



0000374 01 MB  0.436 001
BERRY MEDICAL ENTERPRISES INC

**Notice of Hold for Reasonable Cause regarding your Regions deposit account ending with** ▮▮▮

We are delaying the availability of funds that were deposited to the above-referenced account as part of the following transaction. If you previously received a notice of hold for this deposit, please disregard and reference this more recent hold notice.

| Deposit Date | Item Amount | Funds Available On |
|---|---|---|
| 02/20/2020 | $   5,000.00 | 02/29/2020 |

The availability of these funds is being delayed because of the following:
- We have confidential information that indicates that the check may not be paid.

If you did not receive this notice at the time you made the deposit and the check you deposited is eventually paid, we will refund to you any fees for overdrafts or returned checks that result solely from the additional delay that we are placing on these funds. You may obtain a refund of such fees at any Regions Bank branch office.

If you have any questions about this notice, please visit your Regions branch or call us at 1-800-REGIONS (734-4667). Thank you for your prompt attention to this important matter.

Regions Check & Deposit Fraud Monitoring Department

DFDHL 082019

 **REGIONS**

February 21, 2020





0000373 01 MB  0.436 001
BERRY LAND MANAGEMENT LLC

**Notice of Hold for Reasonable Cause regarding your Regions deposit account ending with** ▮▮▮▮

We are delaying the availability of funds that were deposited to the above-referenced account as part of the following transaction.  If you previously received a notice of hold for this deposit, please disregard and reference this more recent hold notice.

| Deposit Date | Item Amount | Funds Available On |
|---|---|---|
| 02/20/2020 | $  5,000.00 | 02/29/2020 |

The availability of these funds is being delayed because of the following:
- We have confidential information that indicates that the check may not be paid.

If you did not receive this notice at the time you made the deposit and the check you deposited is eventually paid, we will refund to you any fees for overdrafts or returned checks that result solely from the additional delay that we are placing on these funds. You may obtain a refund of such fees at any Regions Bank branch office.

If you have any questions about this notice, please visit your Regions branch or call us at 1-800-REGIONS (734-4667). Thank you for your prompt attention to this important matter.

Regions Check & Deposit Fraud Monitoring Department

DFDHL 082019

Exhibit D, p. 30

E
X
H
I
B
I
T

E

**EXHIBIT E**

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,

 4              Plaintiff,                HONORABLE PAUL D. BORMAN

 5        v.                             No. 14-20779
                                         No. 15-20311
 6   ARIA OMAR SABIT,

 7              Defendant.
                               /
 8   _____

 9
                              SENTENCING
10
                      Monday, January 9, 2017
11
                           9:25 a.m.
12

13   APPEARANCES:

14      For the Plaintiff:        REGINA R. MCCULLOUGH
                                  PHILIP A. ROSS
15                                U.S. Attorney's Office
                                  211 West Fort Street
16                                Suite 2001
                                  Detroit, Michigan  48226
17                                (313) 226-9100

18                                CATHERINE K. DICK
                                  U.S. Department of Justice
19                                Criminal Division
                                  Fraud Section
20                                1301 New York Avenue NW
                                  Washington, D.C.  20005
21                                (202) 305-2402

22   (Appearances continued)

23

24        To Obtain Certified Transcript, Contact:
          Leann S. Lizza, CSR-3746, RPR, CRR, RMR
25                     (313) 965-7510
```

```
 1  APPEARANCES (Continued):

 2      For the Defendant:        TIMOTHY M. LESSING
                                  Freedman, Lessing, Kutinsky &
 3                                Freedman, P.C.
                                  6304 Orchard Lake Road
 4                                West Bloomfield, Michigan
                                                       48322
 5
                                  (248) 353-3600
 6
                                  JOSEPH A. NISKAR
 7                                One North Saginaw Street
                                  Suite 201
 8                                Pontiac, Michigan  48342
                                  (248) 941-4287
 9
                                  ARTHUR J. WEISS
10                                Arthur Jay Weiss &
                                  Associates, P.C.
11                                30445 Northwestern Highway
                                  Suite 225
12                                Farmington Hills, Michigan
                                  48334
13                                (248) 855-5888

14

15

16

17

18

19

20

21

22

23

24

25
```

### 3553(A) FACTORS

```
 1          THE COURT:  Let him get close because he's
 2   soft-spoken.
 3          MR. WEISS:  Thank you.  Your Honor, in our original
 4   submission, reference was made to a couple of debriefings that
 5   Dr. Sabit had with the FBI.
 6          THE COURT:  Yeah.
 7          MR. WEISS:  I don't want to go into that on the
 8   record.
 9          THE COURT:  Okay.
10          MR. WEISS:  But I wanted at least the sidebar record
11   to indicate that we are going to ask the Court to take that
12   into consideration.
13          THE COURT:  I've read every word in the debriefings
14   and everything else you submitted.
15          MR. WEISS:  There are two additional debriefings.
16          THE COURT:  Besides those?
17          MR. WEISS:  Besides those that deal with matters of
18   national security.  The first one was before I became involved.
19   Mr. Niskar sat in on that.  We don't have a 302.  I don't know
20   if anything came of it.  Shortly before the holidays.  Just
21   this past Christmas, New Year's, there was another debriefing
22   requested by Jonathan Tukel.  Mr. Niskar sat in on that one as
23   well.  I don't know if anything came of it, but I just wanted
24   to let you know, the Court know, that in addition to those
25   debriefings that the Court has, the 302s, there were two
```

1  additional matters that, admittedly, did not deal with medicine

2  or fraud or anything like that.  They dealt with matters of

3  national security.

4          THE COURT:  Okay.

5          MS. MCCULLOUGH:  Just as a point of clarification --

6          THE COURT:  Speak louder.

7          MS. MCCULLOUGH:  Just as a point of clarification, the

8  interview that took place over the -- prior to the holiday was

9  not a debriefing.  It was an interview, Your Honor.  It had

10  nothing to do with a debriefing.  It was about information that

11  came to light that involved the Defendant.  So there was an

12  interview that was done.  It was not necessarily a debriefing

13  about information he had related to other people.

14          MR. NISKAR:  In that debriefing it was related to

15  information that was within the Defendant's knowledge that

16  related to national security so that that did --

17          MS. MCCULLOUGH:  Okay.  So I wasn't present.

18          THE COURT:  Who was present?

19          MS. MCCULLOUGH:  Jonathan Tukel was present, but

20  that's not how it was conveyed to me, so I just wanted to say

21  how it was conveyed to me, Your Honor.

22          MR. NISKAR:  The 302s were not prepared because of the

23  security concerns.  Those are not made available.

24          THE COURT:  But have -- has Mr. Tukel indicated to you

25  and the government of any motion that he intends to make for

```
 1   substantial assistance?

 2           MS. MCCULLOUGH:  No, he has not.  He said that that

 3   did not amount to any information that he would pursue that

 4   would be deemed substantial assistance.

 5           THE COURT:  Okay.

 6           MS. MCCULLOUGH:  For either a 5K1.1 motion or a

 7   Rule 35 motion.

 8           THE COURT:  Okay.  Now, with regard to the earlier

 9   one, you said that was?

10           MR. WEISS:  Before I became involved?

11           THE COURT:  Before you became involved.  So that's

12   something that the government would have had --

13           MS. MCCULLOUGH:  Uh-huh.

14           THE COURT:  -- in its toolbox if it wanted to file the

15   Rule 35.

16           MS. MCCULLOUGH:  That's correct.

17           THE COURT:  And it has not filed a Rule 35?

18           MS. MCCULLOUGH:  That's correct, Your Honor.

19           MR. NISKAR:  And I agree.  That was also information

20   made available to the government and that was taken into

21   account in the initial Rule 11 that was previously rejected by

22   the Court.  So all of that debriefing that occurred prior to

23   the Rule 11 being solidified, that information was taken into

24   account in fashioning what the recommendation was going to be

25   and the cooperation agreement that was signed by Dr. Sabit.
```

```
1                    THE COURT:  Okay.  And that was before --

2             MR. NISKAR:  Before the plea.

3             THE COURT:  When I rejected the Rule 11?

4             MR. NISKAR:  It was prior to.

5             THE COURT:  It was not raised at the time I rejected

6      the plea.  It has not been mentioned to me until now.

7             MR. LESSING:  We did mention.  We did have a previous

8      sidebar.  I'm not sure if it was at that rejection hearing but

9      we had noted it before.

10            THE COURT:  Noted what?

11            MR. LESSING:  That there was cooperation, to what

12     extent the government was using, obviously.

13            THE COURT:  But you didn't provide me with anything

14     relating to cooperation.

15            MR. LESSING:  I thought that was --

16            THE COURT:  In terms of 302s.  I have them now.

17            MR. NISKAR:  No, no one has the 302s related to the

18     national security matters.

19            THE COURT:  Okay.

20            MS. MCCULLOUGH:  Your Honor, for clarification,

21     Jonathan Tukel has told me with respect to both debriefings

22     that it has not amounted to substantial assistance --

23            THE COURT:  From the government.

24            MS. MCCULLOUGH:  From the government's point.  I just

25     want that to be clear.
```

Case 2:14-cv-06979-DDP-JC   Document 214-1   Filed 05/14/20   Page 29 of 29   Page ID
#:3482
2:14-cr-20779-PDB-RSW   Doc # 141   Filed 01/17/17   Pg 90 of 127   Pg ID 2731

                          **3553(A) FACTORS**                              90

```
 1            THE COURT:  Thank you.

 2            MR. WEISS:  But the Court can consider it.  Secondly,

 3    it is my understanding, and now that we're all here, that the

 4    government does not oppose the three-level reduction for

 5    acceptance of responsibility.  So would the Court --

 6            THE COURT:  I thought in the latest briefing they

 7    mentioned that based upon the statements and the information

 8    that you provided the Court, tell me if I'm wrong, but I

 9    thought that Miss Dick did raise the issue of are they getting

10    into the issue of whether the acceptance of responsibility is

11    still valid given the statements.  Was that in your brief or am

12    I --

13            MS. DICK:  Yes, Your Honor.

14            THE COURT:  Okay.

15            MS. DICK:  We briefed that because the supplemental

16    sentencing memorandum on both cases made rather categorical

17    statements such as the California surgeries weren't necessary

18    or all of these things were performed as they were.  Those are

19    simply untrue and contradicted.  We accepted at this point

20    based on counsel's representation --

21            THE COURT:  Accepted what point?

22            MS. DICK:  At this point in the proceeding.

23            THE COURT:  Now?  You mean today here?

24            MS. DICK:  Today here, having spoken to counsel, that

25    they are essentially making 3553(a) factor arguments within the
```